If it pleases the Court and Counsel, my name is Tom Luciani. I represent the Spokane County Deputy Sheriff's Association. Before I begin the pertinent points of my argument, I'd like to just talk about some of the undisputed facts in this case. The Spokane County Deputy Sheriff's Association is comprised of approximately 245 commissioned law enforcement officers, all ranks up through sergeant. In approximately 2004, they inquired of the State Social Security Administrator as to whether or not they had been wrongfully included in the Social Security system since the mid-1950s. After conducting the investigation during which he consulted with the liaison with the Social Security Administration and the Internal Revenue Service, Mr. Godwin issued a letter to the Sheriff of Spokane County telling him two things. One, that the deputies had been wrongfully included in that system since the mid-1950s because after police officers were allowed into that system in 1958, a referendum vote was required and none was ever taken. Secondly, Mr. Godwin advised the Sheriff that the deputies had two options. They could either, one, hold a referendum vote and elect to be included in the Social Security system, or they could conduct a vote and advise the county that they wish the county to apply for a refund from the Internal Revenue Service, which would go back approximately three years. They voted to do the second. At some point in time, the Attorney General's office got involved and advised the Department of Employment Security that there was an old Attorney General opinion that held that deputies were not considered police officers in the state of Washington. Upon receiving that information, although we believe Mr. Godwin had it all along, he reversed his position, advised the deputies that they were properly included in the Social Security system, and from that point forward, the county refused to apply for a return of the benefits that had been withheld from the deputies' paycheck. And what's critical in that situation is there are two contributors to those funds. There are the individual deputies who have it withheld, and there's the county that contributes the 50 percent. Now, sir, in 1956, didn't the Spokane employees have a referendum? They did, Your Honor. It's part of Spokane County. And the Spokane County employees voted in that referendum? They did. And aren't your clients a part of the Spokane employees? They are. And so in that referendum, they agreed to participate. So why didn't that apply to you? Because they were not, police officers were not allowed to vote at that time. That's the point. If they were considered, if the state of Washington considered them in positions of policemen at that time, they would not have been included in the vote. Counsel, let me ask you to turn to a different point. You haven't sued any individuals, have you? No, ma'am. It would seem that you have a real problem with immunity for the state of Washington, at least. I don't disagree with the court, but here's the predicament we're in, ma'am. The Tumwater Police Guild did that. They filed with the Social Security Administration on behalf of their guild. They went through an administrative hearing. The federal administrative law judge said that is a state question, we're referring you to state court. They went to state court, or Division II said that's a federal question, you belong in federal court. Well, if you don't belong in federal court, you have no judicial access. Well, individuals like the head of the department would not be entitled to that kind of immunity, but you didn't sue them. No, ma'am, we did not. And part of that involves the efficiency of the process as the defendants in this case would have us do. They want 245 individual members to file a request with the Internal Revenue Service. Well, that's a different issue. I was going to say, I think, I assume Judge Fletcher was talking about you didn't sue a state official defendant. No, we did not. And, I mean, I guess I don't know who we would sue. Mr. Godwin. Why not? Well, we could have sued him. We were a little uncertain as to exactly how to proceed. We talked about going to state court, we talked about federal court, and ultimately elected to proceed in this fashion, knowing it was an uphill battle. I'm not trying to convince the court that we were unaware of the fact that the Eleventh Amendment was going to be a problem. But it seemed to us that the most efficient way of doing this would be to proceed the manner we did. Now, I'm well aware that we have the ability to amend the complaint. And perhaps we should add Mr. Godwin. But that just gets us... You never asked to amend the complaint. No, ma'am, we did not. Maybe it's too late. Well, maybe it is. Unfortunately... Now, you also sued the county. Is that correct? That's correct. Now, the county wouldn't have an Eleventh Amendment. That is correct. And they really hold the key to the whole puzzle, if you will. And we've said this all along. But then don't you have an exhaustion problem with the county? Well, we do, except for the fact that exhaustion, again, the rationale for exhaustion appears to be a number of things, one of which is the efficiency of the proceeding. And I think we would all agree that it's more efficient to have the court determine whether or not these people were truly in positions of police positions at the time and therefore have been wrongfully included, rather than have 245 separate claims. Because if we just do a representative claim, we end up in the same positions in the Salphy case, where if we're not satisfied with the decision and we wind our way through the court system, the court is able to say, well, to the people who filed, you've exhausted your administrative remedies. We will hear your case. But to the other 240 who did not, you're facing the same argument, failure to exhaust administrative remedies. Well, you know, efficiency is fine, but if you don't follow the procedural rules, you plead yourself out of court. And the indication seems to be that you should have proceeded as the Social Security requires you to have an administrative review by the agency itself. Well, Your Honor, what's interesting about that is the Social Security Administration was involved in this process. And nowhere at any time did either the Internal Revenue Service or the Social Security Administration advise the Deputy Sheriff's Association that that was a path they should pursue. The letter was very clear. You've been wrongfully included. Your two options are these. And when those options were precluded by the defendants in this case, we thought that they were the appropriate individuals. And again, Your Honor, the Social Security Administration didn't write that letter. They edited it. How do you know that? Because that's what Mr. Goldman testified in his deposition. He sent the draft to Mr. Beard of the Social Security Administration. He made corrections, and then it went to Sheriff Sturt. However, the bottom line is, Roanne v. Matthews and Baker v. Matthews both say that any individual may obtain a review of a decision in a civil action, these are the important words, after any final decision of the Commissioner of the Social Security made after hearing to which she was a party, irrespective of the amount in controversy. Now, we're bound by our precedent. I understand that. What our precedent says. So how do we give you help, even with the county, if we're bound by our precedent? We're only a three-judge panel here. I understand that, Your Honor. And it would seem to me the distinction lies in facts of this case on two areas. First of all, the entity who's using the failure to exhaust remedy as a shield created the problem. We can only, in our best-case scenario, without the county's assistance, seek 50 cents on the dollar. To me, that's not a remedy. The remedy would be able to obtain 100 cents on the dollar, and the only way we can do that is to have the county file the refund request. And that resolves the second question of, well, the efficiency. We have 245 members, but what if we had 1,000? The only way we're going to exhaust the administrative remedies under that scenario was to have all 1,000 members file a request for refund. And in that situation, I think you genuinely risk inconsistent results amongst the people you're filing with, much less an inability to develop a true record for review down the road. It seems to me that you mix in that response what we're really talking about again, going to the Social Security Agency first rather than going to the IRS. We're not really talking about you seeking that refund from the IRS with these questions. We're just saying, based on our case law, we don't know, based on what we have in front of us, we do not know how we can give you any kind of help if you don't exhaust your administrative remedies at least in front of the Social Security Agency because that's what the cases say. So it would have been a good thing, then, to go there first, and then if you don't get any help, then come see us to see what can be done. And then we use their record as well. And that may be, unfortunately, the path we have to take, Your Honor, but it certainly didn't seem the most efficient at the time, and it doesn't seem to support any of the rationales that are used for the exhaustion of administration remedies. It seems to me you're maybe conflating two concepts. None of us have suggested to you that the association is not the proper party. Now, you've brought it so you have standing, and you may well have. You're always talking about you'd have to sue for all these different members. I'm not sure that that would be necessary. Well, again, hopefully it will not. But as of this point, nobody has indicated a process by which we could collectively apply because you're talking about a refund of individual contributions. Well, if you've got your declaratory judgment, you could then maybe build on that. Well, and not only that, counsel, but my worry is that the Declaratory Judgment Act, even if that were the only thing you were looking for, doesn't necessarily give you jurisdiction to be here. The Declaratory Judgment Act just says what you can do under declaratory judgment, but you have to show some jurisdiction. And my worry is that given where we are, we can't find it because our case law is pretty straight. I guess you've got to go to the Social Security Administration before you can even come. Well, I understand the court's concern. And as I conceded at the start of this argument, I'm not in the strongest of positions. I understand the case law of the Ninth Circuit. My point would be that that is inapplicable in terms of the intertwining of the government agencies in this case. The involvement of the Social Security Administration throughout this case would appear to warrant a departure from that line of cases. Do you want to take some time for rebuttal just in case? Yes, Your Honor. Thank you. Unless the Court has any further questions, I think we've covered all the points we need to cover. May it please the Court, my name is Bruce Turcott. I represent the State of Washington Employment Security Department. And my co-defendant, Spokane County, will be represented by Rob Binger, Deputy Prosecuting Attorney. So I will take seven and a half minutes of the time today. The district court correctly dismissed this lawsuit for lack of jurisdiction under 12b1 on two grounds, the state's sovereign immunity under the 11th Amendment from suit in federal court, and because the association did not pursue its administrative remedies before the Social Security Administration and the Internal Revenue Service, with the Court's indulgence, I'll address these issues. And as to the other bases for dismissal, we'll rely on my brief. Counselor Wright, as a preliminary matter, wasn't the court wrong in saying that the county was entitled to immunity? The county is not entitled to immunity. The state is entitled to 11th Amendment immunity. The county is not. You're correct. And Washington has not waived its 11th Amendment sovereign immunity according to precedent of this court. In the Clallam County case, the state did not waive it in the 218 agreement with the federal government relating to Social Security, and that agreement is in the record,  And this court's precedents have said that a state waiver of sovereign immunity, of course, must be unequivocally expressed. The mere fact that a state participates in a federal program does not waive immunity. That's under U.S. Supreme Court precedents in the Edelman and Florida Department of Health and Rehabilitative Services cases. And the association in this case has presented no evidence of an unequivocal waiver by the state of Washington. Further, Congress did not abrogate the state sovereign immunity in the Social Security Act, and again, the Edelman case held that no provision of the Social Security Act provides for a waiver of state sovereign immunity under that act. This court also held in the Hill case that a congressional abrogation of state sovereign immunity must be unmistakably clear in the text of the statute. The second issue that there's been quite a bit of discussion from the bench today is that the association failed to exhaust its administrative remedies before the federal agencies, in particular, first before the Social Security Administration. It failed to file a claim under the Social Security Act, and that's at Section 405G, before the Commissioner of Social Security. The important thing about that statute to note is that exhaustion under that statute is not simply a jurisprudential concept, but the first element of it, which is presentment of a claim to the Commissioner, has been held to be jurisdictional in itself and may not be waived judicially, and that's the Johnson case from this circuit. Also, the next subsection, 405H, bars any suit against the Social Security Administration unless administrative remedies have been exhausted, and that's according to the Weinberger case out of the U.S. Supreme Court. As Judge Smith pointed out, the Ruan case from this circuit was presented with appellants who were school district employees who sought a declaration that they were not covered by Social Security and a refund of contributions paid, and the court held that we agree with the state appellees that appellants must exhaust their federal administrative remedies before obtaining a judicial review of their rights, if any, growing out of the Social Security Act and the related contract with the state. And the Baker case was a companion case to Ruan where the plaintiffs were taxpayers instead of the employees, and that case held there was no reason not to require exhaustion where the very core of the claim is dependent on a construction of the relevant provisions of the Social Security Act. The second part of exhaustion is that they failed to file for tax refund claims under the Internal Revenue Code, and that's at Section 7422A with the Secretary of the Treasury. In this case, would that be an essential if the association was seeking a declaratory judgment on behalf of all its members? Couldn't they then proceed to work out some administrative way of processing individual claims? That may be. I think that before the first step, I think the most expeditious way would be to file a claim with the Social Security Administration, and I don't know why the association wouldn't be able to do that on behalf of its members. However, there isn't any Ninth Circuit case saying that they have to file for a refund, is there? Yes. It may be a two-step process, a determination from the Social Security Administration that on the eligibility question, if they're successful, because that's a question common to a question of law, if they're successful, then file their claims with that in hand, file for refunds. And that may require participation of the individual members, because clearly the damages would vary, the amounts of refunds would vary. I don't know whether that could be censored. We've never really reached that before, and so therefore we're really hypothecating as to what we'd have to do at that point. But that's why I think Judge Fletcher and I were both questioning very carefully about the Social Security, because we really don't have any Ninth Circuit precedents suggesting what you do after that. I think the precedents point more towards the need to go before the Social Security Administration at the outset. And, of course, if they were unsuccessful in obtaining the result they wanted, then they could obtain judicial review, and ultimately they could be back before this Court potentially with this question, but it would be properly presented as an administrative review case. There's an interesting case, the Dunlop case in my brief is a district court case out of Minnesota, but in that case was presented with an argument that either Sovereign Immunity barred a suit for overwithholding of Social Security taxes, or the suit would fail for failure to join an insensible party, which was in control of the funds, which is the United States. They do bring a claim under 1983, don't they? No, they did not in this case. We're not presented with that in this case. They sought a declaratory judgment. They sought damages. If they brought in 1983, would they have statute of limitations problems? This is just hypothetical because I'm aware that they did not. I don't know the answer to that. But in this, in the posture of this case as it should be presented to the Federal agencies, there's a three-year statute of limitations in effect. It's a three-year look-back period for reimbursement of improper contributions. And if there are no further questions, I will yield my time to my co-defendant. In conclusion, of course, the State respectfully requests this Court affirm the dismissal of this case and for failure to exhaust the mandatory Federal administrative remedies. Thank you. Good morning. I'm Robert Binger representing Spokane County. Two issues I'd like to bring up this morning. Initially, part of this action is for damages against the county in the form of the contributions made by the deputies. The county doesn't have control, possession, or custody of these funds. On that basis, there was no cause for relief stated. Secondly, I don't think a serious argument could be made that exhaustion isn't necessary here. And that's, I think, the key issue of the case. The Rowan case, Rowan case found that, Baker found it, and Judge Shea found it. And that really, I think, is the sum and substance of this case. So the association exhausts their administrative remedies. This Court will not have jurisdiction to hear this matter. Any questions? You would agree, as your counsel has suggested, that the county itself has no immunity under the Eleventh Amendment? Correct, Your Honor. So you agree, then, that the judge was wrong as to that? Yes, Your Honor. I don't know that any of the parties actually read his decision that way. That's what it said. But clearly, we all understand that's not the case. Thank you. Okay. Thank you. Any rebuttal? You have a few minutes left for rebuttal, if you wish. It's in response to a point Mr. Turcotte raised in terms of exhaustion of remedies, that being, first, we would go to the Social Security Administration to resolve that question. Well, the testimony of Mr. Fletcher in his deposition is the IRS has the money, and it doesn't care what the Social Security Administration says in regard to that money. So we would yet be placed on another futile path where we would file with the Social Security Administration, attempt to determine whether or not they were wrongfully included. If we were dissatisfied with that, go up through the chain and hopefully get a favorable decision at which time we would turn around to the IRS and say, well, here's what we have, and they'd say we don't care. And now we've lost all that time because, as Mr. Turcotte said, it's a look-back session. You don't start the ability to recover three years, three months, and 15 days until you actually file the refund request. And that's the gravamen of our complaint. If the county had filed the refund request, none of us would be standing here. Okay. Thank you. Let me ask one question of you. If, in fact, your clients are ultimately successful and get their three years or whatever back, are they then precluded from being part of the Social Security system in terms of getting benefits? Yes, ma'am. They would. That's part and parcel. If they've been wrongfully included, they have two options, to take a referendum vote to be included, as they have been all along, or to seek a refund, in which case they would not be in the Social Security system from this point. What happens to those who have already retired and are receiving Social Security benefits? They would not be included in this refund. They would not be affected? No. This is only for future retirees. Yes. And you've done the mathematics as to what's beneficial to your people? Well, I've left that up to them. They are already in a pension system, and they've determined that they would rather rely on that system and make those financial contributions than to make double contributions. But the vote was overwhelming in terms of seeking a refund. Does their pension say that it would subtract any Social Security benefits from their pension benefits? I don't know, ma'am. You don't know? Counsel, you brought declaratory judgment here and no 1983 claim, correct? That's correct, Your Honor. I just wanted to make sure that we put that on the record. Thank you very much. The matter will be submitted. I appreciate your arguments.
judges: Fletcher, Paez, Smith